UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

REGINALD T.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

6:20-CV-6252-LJV
DECISION & ORDER

---

On April 20, 2020, the plaintiff, Reginald T. ("Reginald"), brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On January 28, 2021, Reginald moved for judgment on the pleadings, Docket Item 17; on April 12, 2021, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 20; and on May 11, 2021, Reginald replied, Docket Item 21.

For the reasons stated below, this Court grants Reginald's motion in part and denies the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and will refer only to the facts necessary to explain its decision.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

**DISCUSSION**

**I.     ALLEGATIONS**

Reginald argues that the ALJ erred in formulating his physical residual functional capacity ("RFC").³  Docket Item 17-1.  More specifically, Reginald contends that the ALJ improperly discounted the sole treating-source opinion of record and relied instead on consultative opinions that did not account for injuries sustained in his April 2017 car accident.  *Id.* at 20.  This Court agrees that the ALJ erred and, because that error was to Reginald's prejudice, remands the matter to the Commissioner.

**II.    ANALYSIS**

When determining a claimant's RFC, an ALJ must evaluate every medical opinion received.  20 C.F.R. § 404.1527(c).  But an ALJ generally should give greater weight to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with the claimant—because those medical professionals are in the best positions to provide "detailed, longitudinal picture[s] of [the claimant's] medical impairments."  *See id.* § 404.1527(a)(2), (c)(2); *see also Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order).  In fact, a treating

---

³ A claimant's RFC "is the most [he] can still do despite [his] limitations," 20 C.F.R. § 404.1545, "in an ordinary work setting on a regular and continuing basis," *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 86–8, 1986 WL 68636, at *8 (Jan. 1, 1986)).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*

3

physician's opinion is entitled to controlling weight[4] so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  *Id.* § 404.1527(c)(2).

Before an ALJ may give less-than-controlling weight to a treating source's opinion, the ALJ "must explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[ ] (4) whether the physician is a specialist."  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (internal quotations and alterations omitted) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).  These are the so-called "*Burgess* factors" from *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008).  *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating source opinion "is a procedural error."  *Id.* at 96 (quoting *Selian*, 708 F.3d at 418).

---

[4] Because Reginald's claim was filed before March 27, 2017, the so-called "treating-physician rule" applies in this case.  *See Montes v. Comm'r of Soc. Sec.*, 2019 WL 1258897, at *2 n. 4 (S.D.N.Y. Mar. 18, 2019) ("The Social Security Administration adopted regulations in March 2017 that effectively abolished the treating physician rule; however, it did so only for claims filed on or after March 27, 2017.  The plaintiff filed her claim before March 27, 2017.  Thus, the treating physician rule under the previously existing regulations applies.").

In formulating Reginald's physical RFC,[5] the ALJ gave "little weight" to the March 2018 opinion of Reginald's treating physician, Tyler Batey, M.D.,[6] Docket Item 11 at 29, because it was "not consistent with the record," *id.* at 30.[7]  On the other hand, the ALJ gave "some weight" to the opinion of a consulting physician who examined Reginald only once—Harbinder Toor, M.D., Docket Item 11 at 30—and he relied largely on Dr. Toor's opinion to discount Dr. Batey's, *id.* (citing numerous details from Dr. Toor's February 2016 report as inconsistent with Dr. Batey's opinion).[8]

---

[5] The ALJ found that Reginald could perform "sedentary work" as defined under 20 C.F.R. § 404.1567(a) except that he "can occasionally climb ramps and stairs; can never climb ladders, ropes, and scaffolds; can occasionally stoop, balance, kneel, and crouch; can never crawl; can never work at unprotected heights; can have no more than occasional exposure to extreme cold; [and] can be exposed to no more than moderate noise level."  Docket Item 11 at 26.

[6] The opinion is dated March 23, 2017, but this appears to be an error.  *See* Docket Item 11-3 at 884.  As Reginald points out, Docket Item 17-1 at 6 n. 4, and as the Commissioner agrees, Docket Item 20-1 at 19 n. 6, Dr. Batey refers to Reginald's car accident that took place on April 15, 2017, and opines about Reginald's condition as a result of that accident, Docket Item 11-3 at 884.  That suggests that Dr. Batey's opinion should have been dated March 23, ***2018***, and this decision therefore refers to Dr. Batey's March 2018 opinion.

[7] The ALJ gave "no weight" to Dr. Batey's October 2017 and January 2018 opinions because they addressed "[t]he issue of disability" which "is reserved to the Commissioner."  Docket Item 11 at 30.  The ALJ correctly noted that opinions on the ultimate issue of disability are not entitled to any deference.  *Id.*; *see also* 20 C.F.R. § 404.1527(d).  In fact, if an opinion effectively decides the ultimate issue—that is, that the claimant is disabled—it opines on a matter reserved to the Commissioner and to that extent is not considered a "medical opinion" as that term of art is used in the Social Security context.  20 C.F.R. § 404.1527(d).  So an "opinion" by a medical source that a claimant is "'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled."  *Id.* § 404.1527(d)(1).  Nonetheless, in such a circumstance, the ALJ still must analyze what is behind the opinion or recontact the provider to request a translation of the opinion into language that fits the Social Security context.  *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (the fact that the "ultimate finding of whether a claimant is disabled" is "reserved to the [C]ommissioner . . . means that the Social Security Administration *considers the data that physicians provide* but draws its own conclusions") (emphasis added).

5

Dr. Batey's opinion was part of a "treating medical source statement" that he completed on March 23, 2018, based on his nine monthly encounters with Reginald, Docket Item 11-2 at 47, beginning in July 2017, *see* Docket Item 11 at 476 (Reginald's initial appointment with Dr. Batey on July 21, 2017). He diagnosed Reginald with "fibromyalgia, cervical myofascial strain, lumbosacral radiculitis, [and] degenerative disc disease of the lumbar spine with disc protrusion." Docket Item 11-2 at 47. Dr. Batey noted that Reginald had been involved in a car accident on April 15, 2017, which "resulted in exacerbation of [Reginald's] fibromyalgia." *Id.* at 52.

In assigning less-than-controlling weight to Dr. Batey's opinion, the ALJ did not comply with the procedural mandates of the treating-physician rule; in fact, the ALJ did not explicitly consider three of the four *Burgess* factors. Dr. Batey treated Reginald regularly between 2017 and 2018 and therefore likely had "a detailed, longitudinal picture of [Reginald's] medical impairments," *see* 20 C.F.R. § 404.1527(c)(2), but the ALJ did not address "the frequency, length, nature, and extent of treatment" or the persuasive impact of that treatment history, *see Greek*, 802 F.3d at 375 (alteration

---

[8] The ALJ also gave some weight to the opinion of another consultant, H. Moghbeli, M.D., *id.* at 29, who did not examine Reginald but only reviewed his records, *id.* at 729, 736. The fact that the ALJ gave more weight to the opinions of a one-time examiner and of a physician who never laid eyes on Reginald than he gave to that of a physician who saw him frequently over a period of time is another reason to question the ALJ's decision. *See Estrella*, 925 F.3d at 98 (The ALJ "should not rely heavily on the findings of consultative physicians after a single examination [because] . . . a one-time snapshot of a claimant's status may not be indicative of [his] longitudinal mental health . . . The opinion of [a consultative examiner], in other words, [] does not provide a good reason for minimizing that of [a treating source].") (internal quotations and citation omitted); *see also Colgan v. Kijakazi*, 22 F.4th 353, 364 (2d Cir. 2022) (extending the *Estrella* standard for considering consulting and treating opinions of a claimant's mental impairments to cases of physical impairments). Because this Court remands on other grounds, however, it does not reach the issue of whether the ALJ erred in crediting the opinions of consultants at the expense of the opinion of a treating physician.

omitted).  The ALJ also did not address the medical evidence supporting Dr. Batey's opinion, nor did he mention whether or not Dr. Batey was a specialist.  The ALJ's "failure to 'explicitly' apply the *Burgess* factors when assigning weight" to Dr. Batey's treating source opinion was "a procedural error."  *Estrella*, 925 F.3d at 96 (quoting *Selian*, 708 F.3d at 418).

Moreover, the reasons that the ALJ gave for discounting Dr. Batey's opinion were not good ones and provide no reason for this Court to conclude that the ALJ's error might have been harmless.  *See id.* (without "good reasons" for discounting treating-source opinion, the Court cannot "conclude that the error was harmless") (quoting *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)).  Indeed, nearly all the evidence the ALJ cited as inconsistent with Dr. Batey's findings,[9] including Dr. Toor's opinion,[10] was from before Reginald's April 2017 car accident and therefore "stale"—that is, "rendered before some significant development in the claimant's medical history."  *See Vincent B. v. Comm'r of Soc. Sec.*, 2021 WL 4271926, at *3 (W.D.N.Y. Sept. 20, 2021); *see also Gauda v. Comm'r of Soc. Sec.*, 2020 WL 2507334, at *5 (W.D.N.Y. May 15, 2020) ("[T]he Court agrees that [the consultative examiner's] opinion was stale and thus did not provide an adequate basis for discounting [a treating source] opinion . . . To the

---

[9] The only evidence post-dating Reginald's accident to which the ALJ referred was a treatment note from May 2, 2018, generally observing "[n]o gross motor deficits or ataxia [impaired balance or coordination]/dysarthria [difficult or unclear speech articulation]."  Docket Item 11 at 30 (citing Docket Item 12-2 at 721).

[10] In discounting Dr. Batey's opinion, the ALJ cited Dr. Toor's February 10, 2016 opinion finding that Reginald exhibited "normal gait[,]" "no evident muscle atrophy[,]" "5/5 strength in upper and lower extremities[,]" and "full range of motion in [his] elbows, forearms, wrists, hips, knees, and ankles bilaterally."  Docket Item 11 at 30 (citing *id.* at 374-77).

extent that the ALJ discredited [the treating source] opinion based on [the consultative examiner's] stale opinion, this was error."). The three years between Dr. Toor's opinion of February 10, 2016, *see* Docket Item 11 at 374-77, and the ALJ's decision of February 21, 2019, *id.* at 34, standing alone, may not have rendered Dr. Toor's opinion stale; but Reginald's intervening car accident, which Dr. Batey found to be significant, certainly did. *See Ambrose-Lounsbury v. Saul*, 2019 WL 3859011, at *3 (W.D.N.Y. Aug. 16, 2019) ("[T]he mere passage of time does not render an opinion stale, but significant developments in an individual's medical history after the examination might.") (internal citations and quotations omitted); *see also Burns v. Saul*, 2020 WL 2847306, at *4 (W.D.N.Y. June 2, 2020) (ALJ erroneously relied on stale opinion given two years before hearing date when claimant had been injured in a car accident in the interim).

In fact, Dr. Batey's March 2018 opinion indicates that the medical issues about which Dr. Toor opined in February 2016 worsened after Reginald's 2017 car accident. *See* Docket Item 11-2 at 52 ("[f]ibromyalgia . . . worse since 4/15/17 car accident); *compare* Docket Item 11 at 375, 377 (Dr. Toor noted that Reginald "appeared to be in moderate pain" and concluded that "[p]ain and muscle spasm interfere[d] with his physical routine"), *with* Docket Item 11-2 at 47 (Dr. Batey opined that Reginald was unable to work "on a regular and continuous basis" due to "myofascial pain and radicular pain in [his] shoulders and back, radiating to [his] hands"); *compare* Docket Item 11 at 375, 377 (Dr. Toor found that Reginald was able to "walk on [his] heels and toes without difficulty" and had a "moderate limitation in standing [and] walking"), *with* Docket Item 11-2 at 50 (Dr. Batey found that that Reginald could not walk for one city block "without rest or severe pain," could stand for only five minutes "before needing to

sit down [or] walk around," and was unable to stand or walk for any period of time during a workday); *compare* Docket Item 11-2 at 377 (Dr. Toor found Reginald's "[h]and and finger dexterity [to be] intact" and observed "grip strength 5/5 bilaterally"), *with* Docket Item 11-2 at 51 (Dr. Batey limited Reginald to fine manipulations and grasping, turning, and twisting objects bilaterally for less than 10% of the workday). The juxtaposition of Dr. Toor's findings of relatively minor limitations and Dr. Batey's findings of significant limitations, along with Dr. Batey's explicit conclusion that Reginald's accident exacerbated his symptoms of fibromyalgia, Docket Item 11-2 at 52, show that Reginald's physical condition deteriorated after his accident. And in light of the "indications that [Reginald's] condition . . . worsened since [February 2016], [Dr. Toor's] assessment did not provide an adequate basis" for the ALJ's conclusions that Dr. Batey was incorrect and that Reginald was not disabled. *See Pierce v. Astrue*, 2010 WL 6184871, at *6 (N.D.N.Y. July 26, 2010).

What is more, the testimony of the vocational expert ("VE") demonstrates that crediting Dr. Batey's opinion may well have resulted in a finding that Reginald was entitled to benefits. *Cf. Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 298 (W.D.N.Y. 2006) (The ALJ's "failure to reconcile the RFC assessment with medical source statements was error[] and based upon the testimony given by the vocational expert, the failure was not harmless."). Dr. Batey concluded that Reginald would be "off-task or otherwise less productive,"[11] Docket Item 11-2 at 51 (emphasis omitted), more than 30% of the workday or week, would need unscheduled breaks

---

[11] Dr. Batey's report characterizes this limitation as "unable to perform work and/or away from the work environment due to his [] severe conditions." Docket Item 11-2 at 51.

"frequently/consistently" during the workday to rest for "hours," *id.* at 50, and likely would be absent from work more than four days a month, *id.*  The VE testified that being "off[-]task for more than 5% of the workday" or "absent from work more than once a month" would be work preclusive.  Docket Item 11 at 68.  So if the ALJ had assigned controlling weight to Dr. Batey's opinion, that may well have changed the RFC and resulted in a finding that Reginald was disabled.  And that requires remand.  *See Manuel v. Comm'r of Soc. Sec.*, 2020 WL 2703442, at *4 (May 26, 2020) (remanding where the ALJ failed to consider an opinion that "could have resulted in a finding of disability . . . if given weight by the ALJ").[12]

---

[12] This Court "will not reach the remaining issues raised by [Reginald] because they may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## **CONCLUSION**

For all those reasons, the Commissioner's motion for judgment on the pleadings, Docket Item 20, is DENIED, and Reginald's motion for judgment on the pleadings, Docket Item 17, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:	May 20, 2022
	Buffalo, New York

                                                */s/ Lawrence J. Vilardo*
                                             LAWRENCE J. VILARDO
                                             UNITED STATES DISTRICT JUDGE